■ DALE A. DIAMOND et al., Appellants, v REILLY HOMES CONSTRUCTION CORPORATION et al., Respondents. (And Three Third-Party Actions.) (And Another Related Action.) [665 NYS2d 464] —Mikoll, J. P. Appeals (1) from an order of the Supreme Court (Torraca, J.), entered January 8, 1997 in Ulster County, which, *inter alia*, denied plaintiffs' motion for partial summary judgment on the issue of liability, and (2) from an order of said court, entered February 28, 1997 in Ulster County, which, *inter alia*, denied plaintiffs' cross motion for reconsideration.

The question on this appeal is whether Supreme Court improperly determined the parties' motions for summary judgment under Labor Law § 240 (1). The relevant facts of the case are not in dispute. Plaintiffs were injured at a construction site on July 22, 1992 in the Town of East Fishkill, Dutchess County. Prior thereto, defendant Reilly Homes Construction Corporation contracted with Dennis Barhydt and Lorraine Barhydt to erect a two-story modular home upon the Barhydts' parcel of land in East Fishkill. The prefabricated modular home was purchased by Reilly Homes from defendant Chelsea Homes, Inc., which delivered the four component sections, or "boxes", to the job site by flatbed truck. Chelsea Homes was required pursuant to its agreement with Reilly Homes to provide a "set crew" to install the home on its foundation. Chelsea contracted with plaintiff Dale A. Diamond, a self-employed contractor doing business as New Dimensions Construction, to provide the set crew and perform the set-up. The set crew consisted of Diamond, plaintiff James Panek, and third-party defendants Kyle C. Diamond and Michael Panek, all four of whom were employees of New Dimensions. The crane and operator necessary for this operation were supplied by defendant Royal Crane, Inc., which was hired by Reilly Homes.

The accident occurred after the first two boxes comprising the front and rear sections of the first story of the home had been set by plaintiffs. The accident occurred in the course of preparation of the third section for lifting. The third section

consisted of the second floor rear portion of the house, upon which rested, unattached, the corresponding part of the roof. It was necessary to raise the roof on the third box before setting the box into place. To raise the roof, a hoist was attached to the crane's hook, and the hoist was then fastened to the perimeter band of the box by four brackets which were fastened to the band by lag bolts. The procedure then called for the roof to be hoisted up with the crane, so that a "knee wall" could be installed under the roof to support it and establish the proper pitch toward the center of the home (a similar procedure would then be followed with respect to the fourth and final box).

At the time the accident occurred, one side of the roof had been lifted eight to nine feet in the air and was suspended in the air for several minutes; the other side of the roof rested against the top of the box at the same level at which plaintiffs were working while affixing the knee wall. Thus, while one side of the roof section was at the same level at which plaintiffs were standing, the other side was suspended above them as indicated. The accident occurred when two of the brackets securing the roof detached or failed, causing the suspended portion of the roof to fall upon plaintiffs.

The legal issue we are called upon to resolve on this appeal is whether these facts support a Labor Law § 240 (1) claim against Reilly Homes, Chelsea Homes and Royal Crane.

That the operation resulting in plaintiffs' injuries falls within the scope of Labor Law § 240 (1) is, we believe, abundantly clear under the Court of Appeals' decisions in *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494) and *Rocovich v Consolidated Edison Co.* (78 NY2d 509). In *Ross (supra)* the Court, reviewed basic principles of Labor Law § 240 (1) liability generally, as well as its holding in *Rocovich (supra)* particularly: "As we observed in [*Rocovich*], Labor Law § 240 (1)'s list of required safety devices (e.g., 'scaffolding,' 'hoists,' 'braces,' 'irons' and 'stays'), all of which are used in connection with elevation differentials, evinces a clear legislative intent to provide 'exceptional protection' for workers against the 'special hazards' that arise *when the work site either is itself elevated or is positioned below the level where 'materials or load [are] hoisted or secured' * * * [T]he 'special hazards' referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured*" (*Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 500-501 [citation omitted; emphasis supplied]).

In denying plaintiffs' motion for summary judgment against

Reilly Homes and Chelsea Homes, and in granting both of these defendants summary judgment against plaintiffs dismissing their Labor Law § 240 (1) claims, Supreme Court relied upon the Court of Appeals' holding in *Rodriguez v Tietz Ctr. for Nursing Care* (84 NY2d 841), as do defendants on appeal. We find no parallel in *Rodriguez (supra)* to the instant case: the Court of Appeals found no evidence of "special elevation risks" attendant to the circumstances in which the worker was injured, i.e., while placing a 120-pound beam upon the ground from a location seven inches above his head, with the assistance of three other workers. Nor does the Court's two-paragraph memorandum opinion qualify in any way its holdings in *Ross (supra)* and *Rocovich (supra)*. Integral to our decision herein are the facts that the mechanism which caused the injury (the hoist apparatus) was one of the devices specifically enumerated in Labor Law § 240 (1), that the "special hazards" encompassed by that section include "being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co., supra*, at 501), and that the statute's purpose of protecting workers is to be liberally construed (*id.*, at 500). We have likewise considered the other cases cited by defendants, including our decision in *Merkle v Weibrecht* (234 AD2d 696, *lv denied* 89 NY2d 813), and find them to be inapposite. In *Merkle (supra)* we observed that the facts of that case were analogous to those of *Misseritti v Mark IV Constr. Co.* (86 NY2d 487), where the collapse of a fire wall was found to be outside the scope of Labor Law § 240 (1), since neither case presented an elevation-related risk contemplated by the statute.

Turning to plaintiffs' contention that Supreme Court erred in dismissing their Labor Law § 240 claims against Royal Crane, we find no merit in this contention. Summary judgment in favor of Royal Crane was properly granted on the Labor Law § 240 (1) claim since Royal Crane was neither the owner, general contractor or agent of either. Royal Crane exercised no supervision or control over any of the work being performed; its involvement was limited to the provision of a crane and operator who was directed in his movements by plaintiffs and employees of New Dimensions (*see, Russin v Picciano & Son*, 54 NY2d 311).

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the orders are modified, on the law, without costs, by reversing so much thereof as (1) denied plaintiffs' motion for partial summary judgment on the issue of liability pursuant to Labor Law § 240 (1) against defendants Reilly Homes Construc-

tion Corporation and Chelsea Homes, Inc. and (2) awarded summary judgment to said defendants dismissing said claim against them; motion granted to that extent and partial summary judgment on the issue of liability awarded to plaintiffs against said defendants on the Labor Law § 240 (1) claim; and, as so modified, affirmed.